UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

LATESSA Y. JORDAN,

              Plaintiff,

v.

GREATER BUFFALO UNITED ACCOUNTABLE
HEALTHCARE NETWORK, et al.,

              Defendants.

1:20-CV-00067-LJV-MJR

REPORT AND
RECOMMENDATION

---

## INTRODUCTION

This case has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1) by the Honorable Lawrence J. Vilardo for all pre-trial matters, including preparation of a report and recommendation on dispositive motions. Before the Court is a motion to dismiss Plaintiff's Second Amended Complaint brought by Defendants Greater Buffalo United Accountable Healthcare Network, Raul Vazquez, M.D., Toni Vazquez, and Ronald Williams pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. No. 21). For the reasons outlined below, this Court recommends that the District Court grant the motion and dismiss Plaintiff's Complaint.

## BACKGROUND

Plaintiff Latessa Y. Jordan commenced this action by complaint filed on January 17, 2020 ("Initial Complaint"). (Dkt. No. 1). The Initial Complaint stated it was brought for discrimination in the employment pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17 ("Title VII"); and the New York State Human Rights Law, N.Y. Exec. Law §§ 290-297 ("NYSHRL"). (*Id.*). It named several defendants, including

1

Plaintiff's former employer, Greater Buffalo United Accounted Healthcare Network ("GBUAHN"), as well as Dr. Raul Vazquez, Toni Vazquez, and Ronald Williams (collectively "Moving Defendants"). (*Id.*).

On March 13, 2020, Plaintiff filed a First Amended Complaint ("FAC"). (Dkt. No. 3). The FAC added that Plaintiff's claims were also brought pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12112-12117 ("ADA"). (*Id.*). It named the above parties, as well as additional defendants. (*Id.*). Judge Vilardo screened Plaintiff's claims in accordance with 28 U.S.C. § 1915(e)(2) and issued an Order dated July 6, 2020 allowing Plaintiff's claims against GBUAHN, Dr. Vazquez, Ms. Vazquez, and Mr. Williams to go forward; dismissing Plaintiff's claims against Dr. Horacio A. Capote, Theresa C. Bowmen-Davis, Miriam Saleh, Lighthouse Management Partners, Inc., and Dr. Rafael E. Roman; and granting Plaintiff leave to amend her complaint against Dr. Roman only. (Dkt. No. 4). In his Order, Judge Vilardo advised Plaintiff that "an amended complaint is intended to completely replace the prior complaint in the action and thus 'renders [any prior complaint] of no legal effect,'" and that "any amended complaint must include all allegations against each of the defendants so that the amended complaint stands alone as the only complaint that the defendants must answer in this action." (*Id.*, at pg. 3).

On August 26, 2020, Plaintiff moved to further amend her complaint as to her allegations concerning Dr. Roman, which motion Judge Vilardo granted by Order dated September 1, 2020. (Dkt. Nos. 9, 10). On September 24, 2020, Plaintiff filed her Second Amended Complaint ("SAC"), along with a supplement filed the following day. (Dkt. Nos. 17, 18). On October 2, 2020, Judge Vilardo issued an Order granting and denying various

relief, as well as directing Plaintiff to file any further amendments to her complaint by November 2, 2020. (Dkt. No. 20). Plaintiff filed no further amendments to her SAC.

On November 16, 2020, Moving Defendants GBUAHN, Dr. Vazquez, Ms. Vazquez, and Mr. Williams filed the instant motion to dismiss. (Dkt. No. 21). The District Court issued a Text Order for briefing on the motion, which set a response deadline for Plaintiff of December 4, 2020. (Dkt. No. 22). Plaintiff failed to file a response or request an extension of time by that deadline. On December 15, 2020, the District Court issued another Text Order directing that, in light of Plaintiff's failure to respond, Plaintiff was directed to show cause within 45 days of the date of order as to why the motion to dismiss should not be considered without a response. (Dkt. No. 23). Again, Plaintiff provided no response. At this time, the Court has fully considered the Moving Defendants' motion to dismiss and makes the following recommendations.

## DISCUSSION

I.  Motion to Dismiss Standard

In order to state a claim on which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). In reviewing a complaint in the context of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court must accept as true all factual allegations and draw all reasonable inferences from those allegations in favor of the plaintiff. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). Specifically, a complaint must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The Supreme Court has further instructed that "[d]etermining whether a complaint states a plausible claim for relief [...] requires the [...] court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'–'that the pleader is entitled to relief.'" *Id.* (citing Fed. R. Civ. P. 8(a)(2)).

Where, as here, the plaintiff is proceeding *pro se*, the complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see also Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) ("It is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted 'to raise the strongest arguments that they *suggest*.'") (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)). That said, even a *pro se* complaint must be dismissed if it does not contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "[A]ll pleadings, *pro se* or otherwise, must contain enough factual allegations to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Zucco v. Auto Zone, Inc.*, 800 F. Supp. 2d 473, 476 (W.D.N.Y. Aug. 2, 2011).

In addition, a court's decision allowing some claims to go forward at the initial screening does not insulate those claims from later review on a motion to dismiss. *Hendrix*

*v. Pactiv LLC*, 19-CV-6419, 2020 U.S. Dist. LEXIS 173183, at *6 (W.D.N.Y. Sept. 21, 2020); *see also Sawyer v. N.Y. State Dep't of Corr. Servs.*, 2015 U.S. Dist. LEXIS 146289, at *8 (W.D.N.Y. Oct. 27, 2015) (finding that a court's initial screening pursuant to § 1915(e) does not preclude later dismissal of that complaint under Fed. R. Civ. P. 12(b)(6)).

II. Application

As a starting point, although the Moving Defendants' motion to dismiss is unopposed, the Court must still consider the motion on its merits. Courts are generally prohibited from granting a motion to dismiss solely because the plaintiff failed to respond. *See McCall v. Pataki*, 232 F.3d 321, 322–23 (2d Cir. 2000) ("If a complaint is sufficient to state a claim on which relief can be granted, the plaintiff's failure to respond to a Rule 12(b)(6) motion does not warrant dismissal."); *see also James v. John Jay College of Crim. Justice*, 776 Fed. Appx. 723, 724 (2d Cir. 2019) (summary order) (explaining that a plaintiff's lack of opposition to a motion to dismiss does not, without more, justify dismissal).

a. Failure to State Claims

The Moving Defendants assert that Plaintiff's SAC fails to state any claim for discrimination or harassment under Title VII or the ADA because she does not tie the complained of conduct to any protected status.[1] The Court agrees.

---

[1] Defendants' initial argument in support of dismissal is that Plaintiff's SAC does not provide notice of any statute(s) Defendant allegedly violated nor any legal grounds for her purported claims. Although this Court agrees that Plaintiff's claims are lacking in this regard, and that Plaintiff was cautioned by the District Court that her amended pleadings would entirely replace her prior complaints, the Court finds it appropriate to review Plaintiff's claims in the context of Title VII, the ADA, and NYSHRL, as Plaintiff did list these as the bases of her action within her Initial and First Amended Complaints. (Dkt. Nos. 1, 3). Considering Plaintiff's *pro se* status, analysis of the substance of her allegations is appropriate. *See Satchell v. Dilworth*, 745 F.2d 781, 785 (2d Cir. 1984) ("[A] *pro se* litigant should be afforded every reasonable opportunity to demonstrate [s]he has a valid claim.").

Title VII makes it an unlawful for an employer to refuse to hire, discharge, or otherwise discriminate against any individual with respect to employment because of such individual's race, color, religion, sex, or national origin. *See* 42 U.S.C. § 2000e-2(a)(1). In order to state a claim for employment discrimination under Title VII, a plaintiff must allege (1) membership in a protected class; (2) that she was qualified for the position; (3) that she experienced adverse employment action; and (4) that the action occurred under circumstances giving rise to an inference of discrimination. *Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 129 (2d Cir. 2012); *see also Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 78 (2d Cir. 2015) ("[I]n a Title VII discrimination case, a plaintiff must plausibly allege that (1) the employer took adverse action against him, and (2) his race, color, religion, or national origin was a motivating factor in the employment decision."). While plaintiff is not required to demonstrate a *prima facie* case of discrimination at the pleading stage, she still must allege facts that "give plausible support to a minimal inference of discriminatory motivation." *See Rosado v. City of New York*, 18-CV-9760, 2020 U.S. Dist. LEXIS 95557, at *10 (S.D.N.Y. June 1, 2020) (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015)). The "*sine qua non* of a ... discriminatory action claim under Title VII is that the discrimination must be *because of*" the employee's protected characteristic. *Humphries v. City Univ. of N.Y.*, 13-CV-2641, 2013 U.S. Dist. LEXIS 169086, at *19 (S.D.N.Y. Nov. 26, 2013) (quoting *Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007)) (emphasis in original). Accordingly, a claim for discrimination under Title VII is properly dismissed where the plaintiff fails "to plead any facts that would create an inference that any adverse action taken by any defendant was based upon" the protected characteristic. *Id.* (quoting *Patane*, 508 F.3d at 112).

To put forth a plausible case under Title VII, Plaintiff must allege that she was subject to an adverse employment action because of her race, gender, religion, or other characteristic. Although Plaintiff lists detailed allegations of various wrongs that have occurred against her in the context of her employment with GBUAHN and unrelated to her work, she fails to tie any of the allegations to her membership in a protected class. Plaintiff alleges that during her work orientation in August 2017 the computer she was given did not work and she had to learn about the job on YouTube. (Dkt. No. 17, pg. 2, ¶ 1). Further, she alleges that the person in charge of orientation did not resolve the problem with her computer, called her a "sloppy person," and whispered in Plaintiff's ear that she was a "loser." (*Id.*). Plaintiff alleges that beginning in January 2018 she was assigned a new manager who spoke loudly and disrespectfully to her, micromanaged her, and made "false write-ups" against her. (*Id.*, ¶ 2). In April 2018, Plaintiff alleges she was sent home for two days without pay after a false write-up. (*Id.*, ¶ 3). In June 2018, Plaintiff alleges she was sent home for being out of uniform. (*Id.*, ¶ 4). On unspecified dates in 2019, Plaintiff alleges that Toni Vazquez changed the dress code, requiring personal health navigators to tuck in their shirts. (*Id.*, ¶ 6). Because of the dress code change, co-workers made comments to Plaintiff such as "hey baby that sure looks good. Can I touch it." (*Id.*). When Plaintiff told Ms. Vazquez about the comments and asked if she could keep her shirt untucked, Ms. Vazquez told her she had to tuck in her shirt or be sent home. (*Id.*). In December 2018,[2] after being "welcomed [...] to the HEARP team," Plaintiff's manager, Jacqulyn Rosado was unapproachable, reluctant to assist her, and told her she would not be getting a raise or training. (*Id.*, ¶ 5). Plaintiff further alleges that Ronald Williams

---

[2] Plaintiff's complaint actually states that this occurred in December 2019, but considering Plaintiff was terminated in May 2019, the Court presumes she means December 2018, if not earlier.

7

claimed she had given him only a $10.00 money order for a replacement key, when she claims she gave him a $15.00 money order. (*Id.*, ¶ 7). Plaintiff next alleges that on May 11, 2019 she was out of work "on doctors' orders due to the hostile work environment." (*Id.*, ¶ 8). She was "getting constant headaches, feeling down and losing weight." (*Id.*). She alleges that the HR department and Mr. Williams would not accept her doctor's note and called security to escort her out of the building. (*Id.*). Plaintiff also alleges that Ms. Vazquez stopped talking her. (*Id.*, ¶ 9). Lastly, Plaintiff alleges she was terminated without reason while out on medical leave on May 30, 2019. (*Id.*, ¶ 10).

Each of these allegations fails to state a claim because Plaintiff does not connect any of the events to any protected status. She fails to identify a Title VII-protected characteristic, let alone plead any facts to create an inference that any adverse actions by her employer were based upon such a characteristic. There are no plausible allegations that Ms. Rosado's failure to train her, the write-ups and suspension, enforcement of the dress code, Plaintiff's negative interactions with Ms. Vazquez and Ms. Rodriquez, Mr. Williams' actions regarding the money order or the doctor's note, or Plaintiff's eventual termination were motivated by discriminatory intent. Thus, Plaintiff's claims of discrimination cannot proceed under Title VII.

Similarly, Plaintiff fails to state a claim for discrimination under the ADA because she has not alleged that she is a qualified individual with a disability or that she suffered an adverse action because of any alleged disability. The ADA prohibits discrimination against a "qualified individual with a disability because of the disability" in the "terms, conditions, and privileges of employment." *See* 42 U.S.C. § 12112(a). "A plaintiff asserting an ADA claim must allege and prove four elements: (1) the defendant is covered by the

ADA; (2) plaintiff suffers from or is regarded as suffering from a disability within the meaning of the ADA; (3) plaintiff was qualified to perform the essential functions of the job, with or without reasonable accommodation; and (4) plaintiff suffered an adverse employment action because of his disability or perceived disability." *Hendrix*, 2020 U.S. Dist. LEXIS 173183, at *6.

Not every impairment is a "disability" within the meaning of the ADA; rather, there are two requirements: the impairment must limit a major life activity and the limitation must be substantial. *Capobianco v. City of New York*, 422 F. 3d 47, 56-57 (2d Cir. 2005) (citing 42 U.S.C. § 12102(2)(A)). "Major life activities" are defined to include functions such as caring for oneself, performing manual tasks, seeing, hearing, walking, speaking, breathing, learning, communicating, and working. 29 C.F.R. § 1630.2(i); *see EEOC v. J.B. Hunt Transp., Inc.*, 321 F.3d 69, 74 (2d Cir. 2003). "The term '[s]ubstantially limits' is not meant to be a demanding standard," but it is "well-established that an impairment does not significantly restrict a major life activity if it results only in mild limitations."[3] *Langella v. Mahopac Cent. Sch. Dist.*, 18-CV-10023, 2020 U.S. Dist. LEXIS 95588, at *26 (S.D.N.Y. May 31, 2020) (citations and internal quotations omitted). Courts require a plaintiff to do more than simply allude to her impairments in her pleading; she must plead how those impairments significantly impacted her major life activities, or she will not survive a motion to dismiss. *Collins v. Giving Back Fund*, 19-CIV-8812, 2019 U.S. Dist. LEXIS 132088, at *33 (S.D.N.Y. Aug. 6, 2019).

---

[3] "Factors to consider in determining whether a major life activity is substantially limited include: the nature and severity of the impairment; its duration or expected duration; and the existence of any actual or expected permanent or long term impact." *Capobianco*, 422 F. 3d at 57.

Here, Plaintiff briefly alludes to one or more medical impairments, but does not plausibly allege a disability or show any link to an adverse employment action. Despite her lengthy pleading, the only references to a medical issue are that she was terminated for no reason while on medical leave and that Mr. Williams would not accept her doctor's note for "constant headaches, feeling down and losing weight." (Dkt. No. 17, pgs. 2-3, ¶¶ 8, 10). Plaintiff's mere mention of having a doctor's note for a medical condition or symptom does not create a viable ADA claim. Plaintiff has not plead facts showing that she had a qualifying disability. She has not alleged how, if at all, her headaches, mental state, or weight loss impacted a major life activity, let alone caused a significant restriction of such an activity. *See Langella*, 2020 U.S. Dist. LEXIS 95588, at *27 (explaining that to successfully plead a qualifying disability under the ADA, a plaintiff must allege which major life activity or activities their impairment substantially affects). Further, plaintiff's allegation that she was terminated does not suggest that she had a qualifying disability, nor that her disability was the motivating reason for the termination. Plaintiff's claims cannot proceed past even the second element of ADA analysis because she has failed to allege that she suffers from a disability within the meaning of the law.

To the extent Plaintiff attempts to state an ADA failure to accommodate claim against GBUAHN for not providing her with a standing desk, her allegation is lacking. She alleges that "during an appointment" with her chiropractor, Dr. Roman, she requested a standing desk but did not receive one. (Dkt. No. 17, pg. 6, ¶¶ 1-2). To be clear, Plaintiff's allegation is that she made a request to Dr. Roman, not that she made a request for a standing desk to any person at GBUAHN. To plead a failure-to-accommodate claim, a plaintiff must allege that "(1) plaintiff is a person with a disability under the meaning of the

ADA; (2) an employer covered by the statute had notice of [her] disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations. *See Dooley v. Jetblue Airways Corp.*, 636 Fed. Appx. 16, 18 (2d Cir. 2015) (summary order) (citing *McMillan v. City of N.Y.*, 711 F.3d 120, 125-26 (2d Cir. 2013). Here, in addition to not alleging a disability, plaintiff fails to allege that her employer refused to make a reasonable accommodation. *See Dooley*, 636 Fed. Appx. at 18-19 (explaining that an employer cannot refuse to make an accommodation that it was never asked to make).

Lastly, plaintiff fails to state a claim for a hostile work environment under Title VII or the ADA. Title VII claims based on hostile work environment are assessed according to the same standards as under the ADA. *Hendrix*, 2020 U.S. Dist. LEXIS 173183 at *13. To state a hostile work environment claim in violation of Title VII, a plaintiff must plead facts that would tend to show that the complained of conduct: (1) is objectively severe or pervasive, that is, the conduct creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's protected characteristic. *See Foster v. Humane Soc'y of Rochester & Monroe County, Inc.*, 724 F. Supp. 2d 382, 391-92 (W.D.N.Y. 2010). "The objective hostility of a work environment depends on the totality of the circumstances," viewed from "the perspective . . . of a 'reasonable person in the plaintiffs position, considering all the circumstances [including] the social context in which particular behavior occurs and is experienced by its target.'" *Redd v. N.Y. State Div. of Parole*, 678 F.3d 166, 176 (2d Cir. 2012) (citations omitted).

Under the standard for hostile work environment, Plaintiff's claims are again insufficient to survive a motion to dismiss because she has not linked any offensive conduct in her workplace to any type of discriminatory intent. Plaintiff lists many instances of disagreements or problems between her and other individuals at GBUAHN, but she does not provide a single allegation that any of the actions of her coworkers, supervisors, or employers were motivated by her membership in a protected class. Although Plaintiff uses the term "harassment" in detailing interactions with Ms. Vazquez, she does not plausibly allege that Ms. Vazquez's conduct constituted objectively severe harassment or that it was discriminatory in nature. Regarding the changes to, and enforcement of, the dress code, Plaintiff does not assert that the dress code was enforced against her in a discriminatory way. Her related claim of receiving offensive comments about her body does not plausibly allege a hostile environment either. Even if Plaintiff alleged that such comments were made because of her sex, which she has not, several instances of offensive remarks by coworkers are insufficient to meet the severe and pervasive standard. *See Petrosino v. Bell Atl.*, 385 F.3d 210, 223 (2d Cir. 2004) ("Simple teasing, offhand comments, or isolated incidents of offensive conduct (unless extremely serious) will not support a claim of discriminatory harassment."); *Robinson v. Purcell Constr. Corp.*, 859 F. Supp. 2d 245, 254-55 (N.D.N.Y. 2012) (collecting cases) ("The Second Circuit has repeatedly held that '[i]solated, minor acts or occasional episodes do not warrant relief' under a hostile environment theory."); *Hockeson v. N.Y. State Office of Gen. Servs.*, 188 F. Supp. 2d 215, 219 (N.D.N.Y. 2002) ("One comment, though offensive, is not severe enough to sufficiently affect the conditions of employment and result in discrimination.").

In sum, even granting Plaintiff's *pro se* complaint a very broad construction, it fails to state any plausible claim of discrimination or hostile work environment against the Moving Defendants under Title VII or the ADA.[4]

### b. Failure to Exhaust Administrative Remedies

In the alternative to dismissal for failure to state a claim for relief, dismissal of Plaintiff's claims is also warranted based on her failure to exhaust administrative remedies. To bring a Title VII or ADA claim in federal court, plaintiff must first exhaust administrative remedies by filing a timely administrative complaint with the U.S. Equal Employment Opportunity Commission ("EEOC") and receiving a "right to sue" letter. *See Elliot-Leach v. N.Y.C. Dep't of Educ.*, 710 F. Appx. 449, 451 (2d Cir. 2017). Specifically, the statute requires that "no civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the Secretary." 29 U.S.C. § 626(d). A filing with the EEOC does not constitute a "charge" unless it can reasonably be construed as a "request-to-act" to protect the employee's rights. *See Federal Express v. Holowecki*, 552 U.S. 389, 402 (2008). Dismissal is appropriate where the failure to exhaust is clear from the face of the complaint and incorporated documents. *See Hendrix*, 2020 U.S. Dist. LEXIS 173183, at *9.

Prior to filing her Initial Complaint, the record shows that Plaintiff did contact the EEOC and she received a "right to sue" notice dated October 24, 2019, (Williams Decl., Dkt. No. 21-1, Ex. A). However, it appears her filing did not constitute a "charge" under

---

[4] It is also noted that, as a matter of law, Plaintiff cannot maintain these claims against the individual defendants. Neither Title VII or the ADA provide for individual liability. *See Spiegel v. Schulman*, 604 F.3d 72, 79-80 (2d Cir. 2010) (holding that the remedial provisions of Title VII do not provide for individual liability); *Garibaldi v. Anixter, Inc.*, 407 F. Supp. 2d 449, 450 (W.D.N.Y. 2006) ("It is well-settled in the Second Circuit that individual employees, including supervisors, cannot be held personally liable for violations of the ADA.").

the law. Along with the notice, the EEOC informed Plaintiff that it could not undertake a full investigation because she failed to offer facts to show her complaints were related to any protected status or otherwise fell within the agency's jurisdiction. (*Id.*, at Ex. B) ("Although it seems you endured hostility in your workplace, you failed to identify any protected basis for discrimination under the statutes we enforce."). The information Plaintiff provided to the EEOC cannot reasonably be viewed as a request for the agency to act within its jurisdiction and, therefore, Plaintiff has not properly filed a charge or exhausted her administrative remedies.[5] *See De Lorenzo v. King Kullen Grocery Co.*, CV-19-3460, 2020 U.S. Dist. LEXIS 146174, at *28 (E.D.N.Y. Aug. 12, 2020) (dismissing ADA claim for lack of exhaustion where plaintiff failed to mention any disability to EEOC and agency could not have included disability discrimination in the scope of its review).

c. State Law Claims

Plaintiff's allegations of discrimination and hostile work environment under state Human Rights Law are also subject to dismissal for failure to state a claim. NYSHRL claims are analyzed under same standard as Title VII and ADA claims, therefore the above determination that Plaintiff's claims cannot be brought under the named federal

---

[5] In another alternative supporting dismissal of at least some claims, several of Plaintiff's allegation would be time-barred even if they had been properly brought before the EEOC. "For Title VII and ADA claims, the statute of limitations is 300 days," *Lee v. ITT Standard*, 268 F. Supp. 2d 315, 335 (W.D.N.Y. 2001), meaning a plaintiff must file an administrative charge within 300 days of the occurrence of a discriminatory act to later pursue a claim in court. *Boza-Meade v. Rochester Housing Auth.*, 170 F. Supp. 3d 535, 545 (W.D.N.Y. 2014). The statutory filing period operates as a statute of limitations, such that claims based on conduct occurring more than 300 days before the EEOC charge is filed are time-barred. *See Boza-Meade*, 170 F. Supp 3d at 545; *Russo v. N.Y. Presbyterian Hosp.*, 972 F. Supp. 2d 429, 442 (E.D.N.Y. 2013). Here, the exact date that Plaintiff filed her administrative complaint is unknown. Plaintiff's "right to sue" notice is dated October 24, 2019 and the accompanying letter states that an EEOC interview occurred on September 11, 2019. From those dates, the Court assumes that Plaintiff filed her administrative complaint in or around September 2019. Thus, any allegations of conduct occurring prior to December 2018 would be time-barred. This includes Plaintiff's claims regarding her August 2017 orientation, comments made by Ms. Rodriguez in January 2018, the "false write-up" in April 2018, and being sent home for being out of uniform in June 2018.

statutes means that they also fail under state law.[6] *See Tolbert v. Smith*, 790 F.3d 427, 439 (2d Cir. 2012) (using same standard to analyze racial discrimination claims under Title VII and NYSHRL); *Salamon v. Our Lady of Victory Hosp.*, 514 F.3d 217, 226 n.9 (2d Cir. 2008) ("We typically treat Title VII and NYHRL discrimination claims as analytically identical, applying the same standard of proof to both claims."); *Cornetta v. Town of Highlands*, 434 F. Supp. 3d 171, 186 (S.D.N.Y. 2020) (applying same standard to evaluate discrimination or hostile work environment claims whether under ADA or NYSHRL). Accordingly, the Court finds that Plaintiff's claims brought pursuant to the NYSHRL should be dismissed for failure to state a claim for relief.

To the extent Plaintiff's claims under NYSHRL are not subject to dismissal on other grounds, it is recommended that the Court decline to exercise supplemental jurisdiction over any remaining state law claims in the absence of a viable action under federal law.

### d. Dismissal of Plaintiff's Entire Second Amended Complaint

For these reasons, the Court concludes that Plaintiff's allegations in her Second Amended Complaint against Defendants GBUAHN, Dr. Vazquez, Ms. Vazquez, and Mr. Williams cannot survive. Accordingly, the Court recommends that the Moving Defendants' motion to dismiss be granted.

Further, it is recommended that Plaintiff's claims against all remaining defendants be dismissed. Pursuant to Judge Vilardo's Order of October 2, 2020, Plaintiff's claims against Oishei Women's and Children's Hospital, Geico Insurance Company, Adult

---

[6] It is noted that while NYSHRL allows for individual liability, Plaintiff's allegations are insufficient to bring the individual defendants within its scope. Under N.Y. Exec. Law § 296, individuals may be subject to liability as employers (1) if they have ownership interests in the employer or do more than carry out personnel decisions of others, or (2) if he or she aids, abets, incites, compels, or coerces the discriminatory conduct. *See Matusick v. Erie County Water Auth.*, 757 F.3d 31, 53 (2d Cir. 2014).

Protective Emergency Housing, and Herron Simmons were subject to dismissal if Plaintiff did not amend her complaint by November 2, 2020. (Dkt. No. 20, pgs. 9, 13). Plaintiff failed to do so; thus, those claims should be dismissed at this time. Judge Vilardo's Order also dismissed Plaintiff's claims against Dereck Sims-Lighten and Dr. Rafael Roman.[7] (Id., pgs. 6, 12). Lastly, Plaintiff's SAC named Dr. Pamela Reed of Community Health as an additional defendant. (Dkt. No. 17). In that complaint, Plaintiff alleges only that Dr. Reed, her primary care doctor, "took [her] out of work because of problems [she] was having due of work inviorment [sic]," that Dr. Reed's "medical notes weren't sufficient to get payment from workers compensation," and that Dr. Reed "recommended counseling." (Id., pg. 5). The claim against Dr. Reed should be dismissed because Plaintiff has failed to state any legal cause of action against her. The dismissal of each of these claims would result in the resolution and dismissal of the entirety of Plaintiff's complaint.

## CONCLUSION

For the foregoing reasons, it is recommended that the Court grant the motion to dismiss brought by Defendants GBUAHN, Dr. Raul Vazquez, Toni Vazquez, and Ronald Williams. (Dkt. No. 21). It is further recommended that the Court dismiss the entirety of Plaintiff's Second Amended Complaint, as the claims against the remaining Defendants are subject to dismissal as explained above.

Pursuant to 28 U.S.C. §636(b)(1), it is hereby **ORDERED** that this Report and Recommendation be filed with the Clerk of Court.

Unless otherwise ordered by Judge Vilardo, any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of

---

[7] It appears that Dr. Roman and Mr. Sims-Lighten were mistakenly not terminated as parties at that time.

16

this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a), and 6(d) of the Federal Rules of Civil Procedure, and W.D.N.Y. L. R. Civ. P. 72. Any requests for an extension of this deadline must be made to Judge Vilardo.

*Failure to file objections, or to request an extension of time to file objections, within fourteen days of service of this Report and Recommendation WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.* See *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989).

The District Court will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the Magistrate Judge in the first instance. *See Paterson–Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985, 990-91 (1st Cir. 1988).

*Finally, the parties are reminded that, pursuant to W.D.N.Y. L.R.Civ.P. 72(b), written objections "shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority." Failure to comply with these provisions may result in the District Court's refusal to consider the objection.*

SO ORDERED.

DATED:   April 19, 2021
         Buffalo, New York

MICHAEL J. ROEMER
United States Magistrate Judge

17